L. Omari v. Dechert, 24-1970 Mr. Moore, you've reserved four minutes for rebuttal. We'll hear from you when you're ready. Thank you, Your Honor. Good morning, Your Honor. Scott Moore, appearing on behalf of Osama L. Omari, the appellant in this case. The first issue which I would like to reiterate is personal jurisdiction of the vital defendants. In the complaint at paragraph 14, that's number A-15, it was pled on information and belief that Mr. Del Rosso made numerous trips to New York for personal meetings. And that information and belief pleading was detailed by Mr. Del Rosso himself in his U.K. case where he stated under oath that he flew to New York to deliver a secure drive. And that was admittedly during the time that he was working for the Dechert law firm and that was during the litigation between Dechert and Mr. L. Omari. So what connects that to this case? I mean, just the timing? Yes. The statement of flying to New York, carrying a secure drive, and the secure drive was at issue in this case, and the timing was that it was during the prior litigation between the parties. But ostensibly this guy has many clients. There's no indication that he was delivering a secure drive to Dechert or much less connected to this particular case, right? That's true. Okay. In personal jurisdiction, because it can be waived, in theory we could assume personal jurisdiction and proceed to the merits, right? Yes. Okay. So let's also talk about the merits. Okay. The lower court record is really reliant on what the magistrate judge did with respect to the merits, and magistrate judge Wang did not discuss at all the fact that the hacked e-mails were admittedly found on Mr. Del Rosa's laptop in London. Well, prior to those e-mails being found, and I understand your argument or your client's argument is that he had no reason to know he was hacked until those e-mails were found, correct? That's correct. And what I'm struggling with, and perhaps you can help me understand how he didn't have knowledge at least as early as March 2020. He filed a complaint claiming that he received an e-mail from a Samantha Allison posing as a Fox News journalist, and that after receiving that e-mail, he suspected that that e-mail had actually resulted in a device to access his computer and that his computer was hacked, and he hired a forensic expert to study his computer and found that it was hacked, correct? I think, Your Honor, it may be confusing some prior cases. Right. If you could restate that, please. He filed a case against another defendant claiming that his computer was hacked as early as March of 2020, or at least he filed the complaint then and hired an expert and then used some of that expert's analysis in this case. But if he knew his computer was hacked in March of 2020, wouldn't he have had the opportunity then to have his and did have his computer examined to know that he had been hacked perhaps by more than one person or one source? Well, there's a couple of points. That case regarding Samantha Allison, that wasn't Mr. El Amari did not allege hacking in the sense that his computer was hacked and e-mails stolen. That was an allegation where someone falsified the e-mail in order to gain information from him personally from personal interviews. That was not a- To access his computer, right? That's what he alleged in that complaint. In order to gain information from him personally, not to steal e-mails. And to gain that information was by accessing his computer, correct? Well, only in the sense that there was an attempt to get information personally from personal interviews with Mr. El Amari, not that there was a hack and a stealing of e-mails. And if I could also- Well, when you access someone's computer to look at confidential information that they would not share with you and you obtain it, I mean, that gets to the other question of whether it's a theft or not. But let's assume for the sake of argument that it is, then I understand your point, which is, well, that particular source of that access to his computer had a different motive and a different intent. But that doesn't nonetheless show that he, at least as early as March 2020, never mind when he first thought he got the e-mail and something was odd and he saw his computer screen. I'm not even talking about that earlier e-mail in 2017, about this e-mail. I don't understand how that doesn't also put him on notice to look at his computer. But, you know, I've gone on too long, so unless you have a quick answer to that, we can move on. Well, I don't believe there was an expert retained to examine a computer in that case. I think the court is, Your Honor, is confusing that with a prior case. But if I could, a related point is the only reason that the e-mails which turned out to be the hacked e-mails from 2017 were found was because there was a journalist tip as to what specific e-mails to look for from the header information. And it was a search for that specific e-mail from the hacker is how the 2017s were found. I guess I'm a little confused about what the hacked e-mails are. Maybe you can help me understand that. There's this laptop that's found, and it contains a backup copy of e-mails containing the e-mail address of Elmari's undersigned counsel. Do you have, is there an indication that these are e-mails between your client and his counsel? Is that in the complaint? How do we know that? Those e-mails are, yes, they're e-mails in that tranche that were between counsel and Mr. Elmari. Where do I see that in the complaint? I think they're in numerous places, Your Honor. Because you never get those e-mails, right? It's like you get a notification that e-mails from this attorney have been found in this laptop. Is that right? The notification was from the proceedings in the United Kingdom. Right. That's where the notice came from. Right. So it's not like you've gone through the e-mails. What you're relying on is this notice that you received, right? For the filing of the complaint, yes. Okay. And I guess I'm just looking at that notice and puzzling over what it means. And it seems to be a backup copy of e-mails containing the e-mail address of Elmari's undersigned counsel. And it doesn't include the contents or identify any sender or recipient. I just don't know, I don't know what those e-mails are from that statement. The e-mails in the complaint, the e-mails, all we knew at the time of the filing of the complaint, was what was in the report that was received with the notice. So tell me what is there that says basically these are your client's e-mails, which I think you mean, right? The, the, the tranche that has been, the tranche that has been referred to in the complaint. But are you, is this going to be something that's in the complaint or now you're referring to stuff that's outside the complaint? No, I, I'm trying to confine myself to your question about the complaint. Sorry, so I interrupted you and that was not helpful to me. I, I, I'm not sure, but what point in time are you asking? I'm just asking what in the complaint tells me these are your client's e-mails? And if it's easier on rebuttal. I, I can, I can save that for rebuttal. Okay, I see that I'm out of time. Thank you. All right, thank you. We'll hear from Mr. Quinn. Good morning, your honors, and may it please the court. Your honors, at the end of the day. Just, sorry, Mr. Quinn, are you for Deckert or the other defendants? Oh, yes, your honor, for defendant Apolise Deckert, LLP. Thank you. At the end of the day, plaintiff Appellant's case is doomed to dismissal because even with the benefit of every inference, he alleges a damage-free intrusion that resulted in the mere copying of his e-mails, but did not deprive him of access to his computer or his e-mails or do any harm to either. That cannot ever give rise to a private CFAA claim or constitute conversion under North Carolina law. I'll focus first on the CFAA, which was a criminal statute for six years before Congress added a narrow civil provision in subsection G, and that civil cause of action by its terms requires, quote, damage or loss, as those terms are defined in the statute. Damage is defined in subsection E to mean the impairment to the integrity or availability of data, a program, or systems, or information. And loss is defined in similarly narrow ways, referring back to the concept of damage and referring to harms caused by the, quote, interruption of service. Even with the benefit of every inference, the complaint here doesn't allege anything like that. So integrity in your reading would not encompass security and privacy. So availability means I can't get my e-mails, right? That makes sense to me. But integrity, that's a different, it's a different word. There's two there for a reason. What does integrity mean here, then? I think it refers to concepts of technological corruption. The Supreme Court in Van Buren described how both concepts, quote, focus on technological harms. And this court in Hancock v. Rensselaer, the case about the city health employee accessing people's confidential medical records in some improper way, held very clearly that loss of confidentiality doesn't qualify. It also doesn't qualify because the statute only allows him to pray for relief on economic damages, on economic loss. That's explicitly required by subsection G. And really what this complaint is about is a loss of his privilege, a loss of his confidentiality. I think Rensselaer controls on that issue. And there just is no allegation of technological harm. It makes sense, too, because we're six years after the fact. Well, doesn't he allege that because they accessed his e-mails, they knew his litigation strategy? I think that's precisely right. He alleges harms that are derivative of misuse six years after the fact. He alleges the non-economic harms of having his privilege invaded. Well, six years after the fact, I understand that. But in terms of if somebody hacks your computer to look at, to gain advantage in litigation, to look at your litigation strategy, are you saying that's not harm? There may be any number of things wrong with it or negative about it for the person affected, but it's not damage or loss as defined in the narrow civil provision of the CFAA. Those terms are about technological damage, and the complaint here doesn't allege that. Even the effort to sort of squeeze into the box where loss can sometimes include certain types of forensic investigation, aside from applying that sort of Twombly, Iqbal-esque label to it, the complaint actually tells a very different story. In paragraphs 41, 51, and 52, it describes an assessment by counsel six years later in the context of a court proceeding. Who's got my client's emails? Are they my client's emails? Were they privileged? How far have they gone? That kind of inquiry— What is your response to Judge Kovner's question to your opponent about what in the complaint tells us these were his emails at all? Because if I just have noticed somebody has my emails, I don't know whether it was my computer they accessed or somebody else's. The recipient of those emails or somebody else who had a copy of those emails through some other means. What's your response to that? I'm not sure that the complaint does make that clear. I don't think that it does. I also don't think that it sufficiently ties Deckert or— and I'll leave Mr. Del Rosa's arguments to his counsel— but really doesn't tie this up. There's a lot of smoke. You know, Deckert used this investigator some years earlier, some years after the fact. The Indian firms that are alleged to be involved had some problem with Meta. But there's not even an allegation anywhere that Deckert directed, agreed, participated in any way. There's sort of an inconsistent grab bag of mens rea allegations. I think all in paragraph 38 he says Deckert knew, Deckert should have known, Deckert avoided knowing. But no allegation of any conduct, any agreement, any direction, any participation. So I think at every link the complaint comes up short in actually connecting all of this up. But the fatal blow is that there's just no technological harm or damage. If I could say just a word on the timeliness issue. Subsection G starts the two-year statute of limitations here upon the act complained of or the discovery of any impairment. There wasn't technological impairment of the type the statute contemplates here. But if somehow this could state a private CFAA claim, then whatever impairment there was was his to discover in 2016. Is this the argument in your brief? I might be missing something. But I'm reading your brief as saying the problem is this is outside the statute of limitations because here's how the CFAA defines damage and that occurs as soon as the technology is compromised. Now I'm hearing a really different, much broader argument about was there even any damage at all? Well, I think we've argued both points. And the simplest path here surely is that a damage-free intrusion that results in only copying can't suffice under either cause of action. But if somehow it does state a CFAA claim, then he discovered all there was to discover back in 2017 when he gets an email that he doesn't recognize, clicks the link that doesn't do what he expects. Where would I see in your brief the broader argument? I'm looking at heading one. In the first heading, it's their time bar because he filed suit more than two years after he discovered the impairment. If I could, I'll find my table of comments here. I think we went through the elements of the CFAA and its failure to state a claim. You said Deckert wasn't involved. You said there was no covered damages. I get all that, but it seems like there's a much broader theory here. Yes, Your Honor. It's section 1B2 of our argument. El-Omari fails to plead a loss or damage that satisfies the CFAA. That's the point I've led with this morning because I think the same fundamental point defeats his conversion claim. I thought that that was basically an argument about did he claim at least $5,000 that consists of economic damages. Right, and he doesn't. The only effort to even get towards economic damages had to do with this investigation point that I was getting to, but it was an investigation led by counsel six years after the fact and not a forensic one. But surely on the timeliness issue, in 2017, he sees an email he doesn't expect, clicks a link that doesn't do what he expects, and sees a computer screen filled with language he doesn't recognize. It's not much discovery of technological damage I'll concede, but that's because there was no technological damage. And so the key point is there's no path through for him here. Either what happened can't state a private CFAA claim, or if it somehow can, he discovered it back in 2017. Sewell's clear he doesn't need to understand what's happened, and we don't have to wait for all the consequences to play out. And with that, Your Honors, I see my time has elapsed. Thank you very much. Thank you, counsel. All right, we'll hear from Mr. Rosenthal. It's still good morning. May it please the court, Sam Rosenthal representing the remaining two appellees, Vital Management and Nicholas Del Rosso. This is the appellant's fourth time to the Second Circuit. His case gets no better after the three dismissals, all of which were sustained on appeal. I would like to address personal jurisdiction, and Judge Murray, you pointed out that it can be waived. It was not in this case. It was waived vigorously, and the magistrate judge ruled, or issued an opinion in a report that there was no personal jurisdiction. In fact, that's correct. There was no personal jurisdiction. This is a case filed by a North Carolina resident against two other North Carolina residents based upon conduct by a firm in China hacking the computer in North Carolina on behalf of a foreign government located in the Middle East. There is nothing that alleges personal jurisdiction as to either Mr. Del Rosso or Vital. And I'd like to point out, there is argument on facts which are nowhere in the record. They're nowhere in the complaint, and, of course, this is a 12B6 dismissal. There was mention, for example, of a trip to New York to deliver a device, and I think, Judge Kovner, you raised a very appropriate question, and that is, what do you have other than timing? And they don't even have timing, because that trip to deliver a device is not alleged in the complaint, and the magistrate judge pointed that out in her opinion. But even if you had put it in the complaint, that would not be enough to establish personal jurisdiction because there's no indication of what that device was, who it was for, who it was being delivered to. Certainly, a trip to New York to take advantage of the Fifth Avenue shopping doesn't establish personal jurisdiction in a computer hacking case unless you can show that you went to Fifth Avenue in connection with the hacking, and there's no connection whatsoever. So even if the facts had been alleged in the complaint, it would not be sufficient to establish personal jurisdiction. I'd also like to say, there's a question of fundamental fairness here, due process. It's our Constitution. It's an important right not to be tried in a case where it would violate fundamental fairness. The appellant did not challenge that. The appellant did not address personal jurisdiction and has waived it. Does not address personal jurisdiction based on due process. It's also true that he hasn't challenged our argument on venue. Venue is an important right. Under 1391, a substantial part of the allegations have to be based in New York. Now, Mr. Moore points out that there are two paragraphs, I think he mentioned one, but actually two, which are his bedrock basis for jurisdiction and venue. Paragraph 14 and paragraph 39, which are replete with speculation and based upon information and belief. One, that upon information and belief, del Rosso made numerous trips to New York for personal meetings as part of his wrongful activities. Not one trip is alleged in the complaint and the only one he's got is this allegation that a personal device or some kind of device had been delivered. I'd like to also go to this issue of timing because I think it's quite appropriate to point out that the allegation of this personal trip to New York to deliver a device was in August of 2016 according to the complaint and the hacking didn't even occur until 2017. So it's not in the complaint and it doesn't make his case anyway even if it were in the complaint. So on personal jurisdiction and venue, I believe he's out. I'd like to also address briefly the statute of limitations. This is the third time that the appellant is trying to make a case that Rack was involved in a hacking claim and I think that the point was made by Judge Kahn that didn't you know in 2020 that your computer had been hacked and there's some quibble over well was it a hacking or was it a use of a phishing email? He knew, he knew in 2020 that Rack had tried to infiltrate and to penetrate his computer and so he can't really say I knew in 2020 my computer was impaired. It was just like a truck had run over and it was a shambles on the middle of the road and now come to this court and say I didn't really think it was impaired at that point because there was something that happened earlier that led me to believe that the computer wasn't impaired. The argument is inherently illogical and contradictory. If in 2020 he knew that his computer was impaired or believed it was, that's enough to trigger the statute of limitations but it actually goes beyond knowing in 2020. He filed a case in 2016, the CREAB case and in that he also tried to argue, he filed a third motion for leave to amend to argue that his claim was based on hacking. So it's hacking based on the 2016 CREAB case, it's hacking in 2020, he can't come before this court and say I didn't know that the statute began running. So statute of limitations is an affirmative defense on which we can rule at the 12B6 stage only if it is plain from the face of the complaint and the documents we're allowed to consider. So the 2017 discovery is plain on the face of the complaint. These other matters that we're now talking about, are those things that are plain from the face of the complaint and matters we can consider at this stage? I believe so because he referred to both the CREAB case in 2016 and the Buchanan case in 2020 in his complaint. The magistrate judge referred to those two but it was the decision of the appellant to insert them in the complaint. Are those different incidents of hacking? He argues it was all part of the same conspiracy. He's arguing on other occasions or through other means this hacking occurred. He may decide to argue that there was a different phishing effort in 2016 or 2020 versus 2017 but all of them are efforts on behalf of Rack to infiltrate or penetrate his computer or his emails. And so he was on notice very early on but I think the point is made also in our briefs that even if you didn't have the previous litigation, you've got him logging on in 2017 and he sees a screen and he doesn't think this is the normal operation of his computer. He thinks this is something I don't understand. I don't know what this is. And now he knows, well gee, I filed a lawsuit in 2016 for hacking and he doesn't think, well maybe that this has to do with the hacking. So you've got the prior litigation but you've also got the 2017 computer screen and taken together I think they would show that the statute of limitations certainly was triggered early on. I'd just like to point out. And the judge, district judge did consider the allegations relating to the 2020 alleged hacking in 2020 as part of the decision. And we believe correctly so. The email in 2017 as well as the 2020, correct? We believe the magistrate judge did correctly. At 842. I'm sorry? At 842 of the record. I don't have the site but I'm sure your honor is correct. And I see my time is up. Unless there are any other questions, we'd ask that the judgment be affirmed. Thank you counsel. Thank you. We'll hear four minutes rebuttal from Mr. Moore. Thank you. Thank you, your honor. One of the main points argued in common by my adversaries and brought up by the court today, I want to remind the court that each hacking incident is a new claim. And the emails it is pled had a date range going all the way to May of 2021. So let's assume for the sake of argument, and I think it's wrong, that the statute of limitations was triggered in 2017, 2020, let's say, for argument. Well, that does not cover the future emails. A hack in 2020 is not going to allow a claimant to know future emails are hacked. So retroactively, perhaps, but in the future, no. The hack continued. So for purposes of statute of limitations, even assuming my adversaries are correct on the discovery dates, the emails from June 1st, 2020 to May of 2021 are within the three-year statute of limitations for North Carolina. And two years of those are within the federal statute of limitations. So I'd urge the court to consider the date range of the hacked emails, which is pled clearly in more than one place in the complaint. I'd also urge the court to reject my adversaries' desire to have the court expand the trigger for the statute of limitations. The complaint pleads a click-and-see situation. Click on a link, see something unique on a page. That does not equal intrusion, that does not equal damage, that does not equal an integrity problem with a computer. It's only something that's visual with the user of the complaint. That would permit the statute of limitations to be triggered every day by millions of users who click and see something that looks unusual to them or even something that looks usual but the email may be fraudulent. So I'd say that's a slippery slope that I'd urge the court to reject. Unless the court has further questions, I'll rest on the pleadings. All right. Thank you, counsel. Thanks to all counsel. That is our final case for argument and we will reserve decision on that one as well.